## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

SHIRLEY CROW; DENNIS CROW; TINA
QUINTAL; UTE QUINTAL; THOMAS
MATHEWS, individually and as parent and
natural guardian of S.M., minor child; TINA
MATHEWS; ROBBIN VINYARD; KERRI
CANNON; JONATHAN CANNON; ALFRED
GRANT; NORMA HILDE; YOLANDA
WILSON; FABIAN MENDOZA; CARLA
GUELKER; GWENDOLYN WHITFIELD;
ROY WHITFIELD; LYNN MARTINEZ,
individually and as parent and natural guardian
of C.M.1, C.M.2, C.M.3, and C.M.4, minor
children; CHRISTOPHER MARTINEZ;
ALYSSA MARTINEZ; CAMERON
MARTINEZ; ALEXIS ESSELMAN; SHELLY-
ANN HIGGINS; JOHN HIGGINS; AVA
HIGGINS; DAWN PURKEY; DENISE
WILLIAMS; MELISSA SALSER; MONIKA
MALMQUIST; DANIEL MALMQUIST;
KIMBERLY ECKOLDT; KENNETH
BENJAMIN, JR.; MATEO ROBINSON;
MARK ROBINSON; MARGO RHINE;
ROBERT RHINE; MICHAEL JONES;
RANDALL KEILEY; JEFF FRANK;
PATRICIA FRANK; ANGILO VERA; EFRAIN
VERA-SOTO; JASMINE KIZER; MICHAEL
MATLI; KIMBERLY CHAPPELL, individually
and as parent and natural guardian of H.C.1,
H.C.2, and S.C., minor children; MARY
MORRIS; TINA FARRELL, individually and as
parent and natural guardian of P.F., minor child;
JASON FARRELL; SKYY FARRELL;
CHEYENNE FARRELL; PETE MARTINEZ;
NATASHA STEINBERG; MARVA
MONTEITH; LILTON MONTEITH;
CATHERINE ZABORSKI; KAREN BRANT;

JEANNE BASINGER; ROBBIE WOODEN;
WILLIAM WOODEN; MARTHA SCROGGS;
RALPH SCROGGS; DAVID HARRIS;
DANIEL WALLACE; DEREK PHILLIPS;
DANA PHILLIPS, individually and as parent
and natural guardian of A.P., minor child;
DEBORAH PHILLIPS; DANTE GREY;
ARNETTE BOOTH; BRADLEY BUONO;
CHRISTOPHER WHEELER; TRAVIS
JACOBS-HOFMANN; MICHELE BRINK;
MICHAEL MCBEE; LYNDEL FELKER;
ALICIA ORNELAS; CHRISTINE FELKER;
KEVIN FELKER; MICHELLE POWERS,
individually and as parent and natural guardian
of J.P. and T.P., minor children; THOMAS
POWERS; VIRGINIA MEDINA; LATISCHA
HARRIS; MELONIE STANTON; LEO
SPAGNOLINI; SHANNA VALLEJOS;
MELVA TILLAR; JACK CUMMINGS;
MICHAEL CLARK; MARIE CLARK; AMY
CLARK; MARION GARNER; JILL
SCHWYTER; MAX SCHWYTER; MICHELLE
BOYD; LARRY DAVIDSON; THOMAS
GRABE; MARK HOLTORF; PATRICIA
MOYERS; MARNE KOSOBUCKI, individually
and as parent and natural guardian of K.K.1 and
K.K.2, minor children; ISABELLE JUSTICE;
MICHELLE MATHENY; LAWRENCE
WALKER; SHAWN ROBERSON; ROBERT
ROBERSON; LISA P. BENJAMIN,
individually and as parent and natural guardian
of J.B., minor child; CHRISTINE BERTRAND;
TIMOTHY WILLIAMS; LINNITA
WILLIAMS; FRANCES GORTMAKER;
JERRY GORTMAKER; LINDA CROW;
DAWN MASLOWSKI; DAVID
MASLOWSKI; MARIA ZAKRZEWSKI;
JOHN VIGIL; TERRY SUNDERLIN;
REBECCA SUNDERLIN; ERICA NEAL;
ROBERT PENA; CLIFFORD KNUDSON;

KATHLEEN BURTON; THOMAS BURTON;
LARRY PRICE; DANIEL FLOREZ; KRISTIN
FLOREZ; MAREN COMFORT, individually
and as parent and natural guardian of J.C.1 and
J.C.2, minor children; JEFFERY COMFORT;
JOHN MOORE; GLENNA MOORE;
MARTHA KRIETEMEYER; DANIEL
KLOBERDANZ; DEBORAH KLOBERDANZ,
IVAN ENGLEMAN; SHARON OSTERTAG;
KEVIN DANIELS, SR.; LORRAINE BALCK;
ANGEL WILMORE, individually and as parent
and natural guardian of D.W., T.O. and N.W.,
minor children; BENJAMIN WILMORE;
ATHEL BLUEBIRD; TIMOTHY CLUBB;
DENNIS CROW; THOMAS HOCHBERG;
MARIE ENGLEMAN; JUSTINE
HANNEMAN; JOSE SANTIAGO; and KATHY
COLEMAN,

*Plaintiffs*,

v.

THE 3M COMPANY, f/k/a Minnesota Mining
and Manufacturing, Co.; TYCO FIRE
PRODUCTS, L.P., successor in interest to THE
ANSUL COMPANY; BUCKEYE FIRE
EQUIPMENT CO.; CHEMGUARD;
NATIONAL FOAM, INC.; KIDDE FIRE
FIGHTING, INC., f/k/a CHUBB NATIONAL
FOAM, INC., f/k/a NATIONAL FOAM, INC.,
individually and as successor in interest to
NATIONAL FOAM, INC.; KIDDE PLC, INC.,
f/k/a WILLIAMS US INC., f/k/a WILLIAMS
HOLDINGS, INC., individually and as
successor in interest to NATIONAL FOAM,
INC.; KIDDE-FENWAL, INC., individually and
as successor in interest to NATIONAL FOAM,
INC.; and UTC FIRE & SECURITY
AMERICAS CORPORATION, INC., f/k/a GE
INTERLOGIX, INC., individually and as
successor in interest to NATIONAL FOAM,
INC.;

3

*Defendants.*

## COMPLAINT AND JURY DEMAND

Plaintiffs, by and through their undersigned counsel, hereby file this Complaint and Jury Demand ("Complaint") against Defendants, THE 3M COMPANY, f/k/a Minnesota Mining and Manufacturing, Co.; TYCO FIRE PRODUCTS L.P.; successor in interest to THE ANSUL COMPANY; BUCKEYE FIRE PROTECTION CO.; CHEMGAURD; NATIONAL FOAM, INC.; KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOA, INC.; KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., individually and as a successor in interest to NATIONAL FOAM, INC.; KIDDE-FENWAL, INC., individually and as a successor in interest to NATIONAL FOAM, INC.; and UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC.; (collectively "Defendants"). Plaintiffs assert personal injury and/or property damage as a result of the contamination of the drinking water supply serving the Cities of Security, Widefield, and parts of Colorado Springs, and complain and allege on personal knowledge as to themselves, and on information and belief as to all other matters, as follows:

## INTRODUCTION

1.      The communities of Fountain, Security, Widefield, parts of Colorado Springs (collectively the "Communities") are all located in El Paso County, Colorado. This complaint is a related action to *Bell, et al., v. The 3M Company, et al*., 16-cv-2351-RBJ.

2.      The Communities are located in close proximity to and downgradient of Peterson Air Force Base and the Colorado Springs Municipal Airport, which share one property.

3.      The United States Air Force ("USAF") provided firefighting services to the Colorado Springs Municipal Airport, owned by the City of Colorado Springs through a joint use

4

agreement. For purposes of this Complaint, the property of Peterson Air Force Base shall include the property of the Colorado Springs Municipal Airport and shall collectively be referred to as "PAFB."

4.      Residents of the Communities receive their potable water either from private wells or from their municipal water provider.

5.      The Communities receive municipal drinking water from the City of Fountain Utilities Department, the Security Water and Sanitation District, and the Widefield Water and Sanitation District.

6.      The Security Water and Sanitation District provides drinking water to approximately 19,000 residential and business customers.

7.      The City of Fountain Utilities Department provides drinking water to approximately 29,000 residential and business customers.

8.      The Widefield Water and Sanitation District provides drinking water to approximately 16,000 residential and business customers.

9.      On May 2, 2012, the United States Environmental Protection Agency ("USEPA") published its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), requiring public water systems nationwide to monitor for thirty (30) contaminants of concern between 2013 and 2015.

10.     As part of the UCMR3, public water systems are required to sample for six perfluorinated compounds ("PFCs"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS").

11.     In October 2015, the USEPA released results from UCMR3 that indicated the Communities' water supplies were contaminated with PFOA and PFOS.

12.     Prior to the disclosure of the UCMR3 data, there was no notification to the residents of the Communities that the water was contaminated with PFOA and PFOS.

13.     In May 2016, the USEPA established a drinking water health advisory level for PFOA and PFOS and warned that lifetime exposure to PFOA and PFOS over 70 parts per trillion ("ppt") was linked to the development of numerous serious medical conditions.

14.     In response to the USEPA's establishment of the 70 ppt health advisory level, the Communities' municipal water providers notified the residents in the Communities of the contamination and took action to reduce the PFOA and PFOS levels in the drinking water, including shutting down wells, obtaining and/or purchasing alternative sources of water, and blending clean water with the contaminated water to lower the PFC level in their customers' water.

15.     It was in this same month that Plaintiffs were first made aware that their drinking water was contaminated with PFCs at hazardous levels and were advised to seek alternate drinking water supplies.

16.     Among the 63 areas nationwide where the USEPA found PFOA and PFOS exceeding the 70 ppt limit, federal data shows that the Communities exhibit some of the highest levels of contamination.[1]

17.     By this time, local newspapers were reporting that federal data showed that the water in all 32 of the Security Water and Sanitation District's municipal wells exhibited PFC contamination at levels exceeding the EPA health advisory limit of 70 ppt. At one well, PFC concentration reached 1,370 ppt, nearly 20 times in excess of the EPA health advisory.[2]

---

[1] Bruce Finley, *Drinking water in three Colorado cities contaminated with toxic chemicals above EPA limits*, DENVER POST, (June 15, 2016 4:08 PM), http://www.denverpost.com/2016/06/15/colorado-widefield-fountain-security-water-chemicals-toxic-epa/.
[2] *Id.*

18.    EPA officials recommended that pregnant women and small children should not drink local water serving the Communities.[3]

19.    Subsequent investigations into the contamination were carried out by the United States Army Corps of Engineers on behalf of the USAF and the Colorado Department of Public Health & Environment ("CDPHE") and have uncovered widespread PFC contamination of the groundwater resources for the Communities.[4]

20.    These investigations also concluded that the basis for this widespread contamination of the Communities' ground water is decades of use, storage, and disposal of aqueous film-forming foam ("AFFF") at PAFB that contained PFOA and PFOS.

21.    The CDPHE horizontally delineated the PFC plumes, designating these plumes as "Areas of Investigation" ("CDPHE Areas of Investigation").

22.    Defendants manufactured, sold, and distributed AFFF to PAFB despite their awareness that the inclusion of PFOA and PFOS in AFFF presented an unreasonable risk to human health and the environment and was inherently dangerous.

23.    The Defendants also knew that both PFOA and PFOS were highly soluble and mobile in water, highly likely to contaminate water supplies, highly persistent in the environment, and known to bio-accumulate in humans and contribute to the development of numerous serious health conditions, especially for sensitive receptors such as young children and pregnant and nursing women.

---

[3] *Id.*

[4] Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base El Paso County, Colorado, U.S. Army Corps of Engineers (November 2016), http://www.peterson.af.mil/Portals/15/documents/Public%20Notices/552503_Revised%20Final%20Peterson%20AFB%20PA_11_2016.pdf?ver=2017-05-16-162140-693.

24.     The Defendants marketed and sold their products with knowledge that the USAF and PAFB would use large quantities of AFFF containing PFOA and PFOS in training operations and in emergency fire-fighting situations in such a manner that PFOA and PFOS would contaminate the air, soil, and groundwater.

25.     The Defendants marketed and sold their products with knowledge that large quantities of AFFF containing PFOA and PFOS would be stored in fire suppressant systems and tanks on USAF Bases and at airports, including PAFB, and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the air, soil, and groundwater.

26.     The Defendants failed in their duty to manufacture a product that would not cause widespread harm and in their duty to warn the United States Department of Defense ("DOD"), the USAF, PAFB, the municipal water providers, and the residents in the surrounding Communities of the inherently dangerous properties of their AFFF products.

27.     There are over 64,000 residents of the Communities who were exposed to PFOA and PFOS contaminated drinking water from the City of Fountain, the Security Water and Sanitation District, the Widefield Water and Sanitation District, and private wells, all of which obtain groundwater from the CDPHE Areas of Investigation.

28.     The Plaintiffs in this complaint are all residents of the cities of Security, Widefield, and of Colorado Springs, Colorado.

## Health Effects of PFOS and PFOA Exposure

29.     Many parties have studied PFOA and PFOS and have concluded that exposure to PFOA and PFOS is associated with the development of numerous serious medical conditions.

30.     PFOA, sometimes identified as C8 due to the common presence of eight carbons in the PFOA molecule, was the subject of a study formed out of a class action settlement arising out of water contamination from DuPont's Washington Works located in Wood County, West Virginia.

31.     The C8 Science Panel consisted of three epidemiologists specifically tasked with determining whether there was a link between PFOA exposure and human diseases.

32.     In 2012, the Panel found probable links between PFOA and kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

33.     In May 2015, based on concerns about the production and release of PFOA into the environment, scientists and other professionals from a variety of disciplines issued the "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFASs)," a policy statement calling for greater regulation, restrictions, and limits on the manufacture and handling of any PFOA containing product, as well as the development of safe, non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.

34.     In May 2016, the USEPA issued Lifetime Health Advisories advising against lifetime PFOA and PFOS exposure above 70 ppt.

35.     The USEPA's 70 ppt limit is designed to protect the population at large from exposure to harmful concentrations of PFOA and PFOS in drinking water above which adverse health effects are anticipated to occur.

36.     According to the USEPA Lifetime Health Advisory, the non-cancer adverse health effects observed following exposure to PFOS are the same as those observed with PFOA.

37.    Many states, however, have issued lower regulatory limits. For example, Vermont has set a combined level of 20 ppt for PFOA and PFOS and New Jersey has set a maximum contaminant level of 14 ppt for PFOA.

38.    On November 10, 2017, California listed PFOA and PFOS as chemicals known to the state to cause reproductive toxicity, pursuant to Proposition 65, The Safe Drinking Water and Toxic Enforcement Act of 1986.

39.    Colorado currently follows the USEPA Lifetime Health Advisory level of 70 ppt for combined lifetime exposure to PFOA and PFOS.

40.    The CDPHE has acknowledged that the link between PFOA and PFOS exposure and developmental effects has been strengthening, including low birth weight and accelerated puberty. It has also acknowledged that some human studies show that increased exposure may increase the risk for changes in blood cholesterol, liver enzymes, and uric acid levels, which may be linked with an elevated risk of heart disease, liver disease or high blood pressure.[5]

**PLAINTIFF'S EXPOSURE AND DAMAGES**

41.    Years of ingestion and dermal absorption of contaminated water from the Fountain, Security, and Widefield water districts have exposed unknowing residents of the Communities to PFCs at concentrations hazardous to their health.

42.    Plaintiffs have been injured as a result of receiving water with elevated levels of PFCs, including PFOA and PFOS.

43.    Plaintiffs have suffered exposure, bioaccumulation of PFCs in their blood, personal injury, property damage, and the diminution of property values due to PFC contamination of the

---

[5] https://www.colorado.gov/pacific/cdphe/PFCs/health/advisory. (Last visited 4/11/18).

municipal and private water supplies caused by Defendants' manufacture, distribution, and sale of AFFF.

44.     The properties of the Plaintiffs have been damaged due to the presence of PFCs in their homes, soil, surrounding property, and potable water supply.

45.     Plaintiffs seek recovery from all Defendants for injuries, damages, and losses suffered by the Plaintiffs, each of whom suffered injuries as a direct and proximate result of exposure to and consumption of PFC-contaminated water from the municipal and private drinking water supplies, in an amount to be determined at trial, exclusive of interest, costs, and attorneys' fees.

## JURISDICTION AND VENUE

46.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1) in that this action is between citizens of different States.

47.     This Court has jurisdiction over Defendants pursuant to C.R.S.§ 13-1-124.

48.     "Pursuant to 28 U.S.C. § 1332, a federal district court possesses original subject matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00. *See Johnson v. Rodrigues*, 226 F.3d 1103, 1107 (10th Cir. 2000). The value of the case exceeds the jurisdictional threshold value of $75,000.00, exclusive of all interest and costs, taking into account the nature and extent of the injuries and damages sustained by each individual Plaintiff, and the reasonable economic and non-economic injuries and damages sustained by each individual Plaintiff."

49.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the District of Colorado and caused harm to Plaintiffs, all of whom reside in this District.

## PARTIES

50.     Plaintiff Shirley Crow currently resides at 8480 Hwy 96, Westcliffe, CO 81252. Plaintiff Shirley Crow resided at 6630 Cottonwood Grove Drive, Colorado Springs, CO 80925 for all times relevant herein. As a result of Shirley Crow's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Shirley Crow has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease and high cholesterol.

51.     Plaintiff Dennis Crow currently resides at 8480 Hwy 96, Westcliffe, CO 81252. Plaintiff Dennis Crow resided at 6630 Cottonwood Grove Drive, Colorado Springs, CO 80925 for all times relevant herein. As a result of Dennis Crow's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dennis Crow has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease and high cholesterol.

52.     Plaintiff Tina Quintal currently resides at 8494 Appleton Trail, Colorado Springs, CO 80925. As a result of Tina Quintal's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Tina Quintal has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

53.     Plaintiff Ute Quintal currently owns and resides at 8494 Appleton Trail, Colorado Springs, CO 80925. As a result of Ute Quintal's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ute Quintal has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

54.     Plaintiff Thomas Mathews, individually and as parent and natural guardian of S.M., currently resides at 85 Kathi Circle, Colorado Springs, CO 80911 with minor child S.M. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply,

Thomas Mathews and S.M. have elevated levels of PFOA, PFOS, and/or PFCs in their blood and has been diagnosed with high blood pressure.

55.    Plaintiff Tina Mathews currently resides at 85 Kathi Circle, Colorado Springs, CO 80911. As a result of her exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Tina Mathews has elevated levels of PFOA, PFOS, and/or PFCs in her blood.

56.    Plaintiff Robbin Vinyard currently resides at 850 Decendant Drive, Fountain, CO 80817. As a result of Robbin Vinyard's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robbin Vinyard has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

57.    Plaintiff Kerri Cannon currently owns and resides at 852 Foxwood Drive, Colorado Springs, CO 80911. As a result of Kerri Cannon's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kerri Cannon has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid abnormalities.

58.    Plaintiff Jonathan Cannon currently owns and resides at 852 Foxwood Drive, Colorado Springs, CO 80911. As a result of Jonathan Cannon's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jonathan Cannon has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

59.    Plaintiff Alfred Grant currently owns and resides at 855 Lords Hill Dr, Fountain, CO 80817. As a result of Alfred Grant's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Alfred Grant has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with high cholesterol.

60.    Plaintiff Norma Hilde currently owns and resides at 862 Marshall Drive, Fountain, CO 80817. As a result of Norma Hilde's exposure to elevated levels of PFOA, PFOS, and/or PFCs

in the drinking water supply, Norma Hilde has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with kidney cancer and high cholesterol.

61.    Plaintiff Yolanda Wilson currently resides at 863 Barn Owl Drive, Fountain, CO 80817. As a result of Yolanda Wilson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Yolanda Wilson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

62.    Plaintiff Fabian Mendoza currently owns and resides at 866 Marshall Drive, Fountain, CO 80817. As a result of Fabian Mendoza's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Fabian Mendoza has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

63.    Plaintiff Carla Guelker currently resides at 870 Stargate Drive, Colorado Springs, CO 80911. As a result of Carla Guelker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Carla Guelker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

64.    Plaintiff Gwendolyn Whitfield currently resides at 871 Eagle Bend Dr, Colorado Springs, CO 80911. As a result of Gwendolyn Whitfield's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Gwendolyn Whitfield has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

65.    Plaintiff Roy Whitfield currently resides at 871 Eagle Bend Drive, Colorado Springs, CO 80911. As a result of Roy Whitfield's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Roy Whitfield has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

66.    Plaintiff Lynn Martinez, individually and as parent and natural guardian of C.M.1, currently resides at 873 Marshall Drive, Fountain, CO 80817 with minor child C.M.1 As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lynn Martinez and C.M.1 have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

67.    Plaintiff Lynn Martinez, individually and as parent and natural guardian of C.M.2, currently resides at 873 Marshall Drive, Fountain, CO 80817 with minor child C.M.2. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lynn Martinez and C.M.2 have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

68.    Plaintiff Lynn Martinez, individually and as parent and natural guardian of C.M.3, currently resides at 873 Marshall Drive, Fountain, CO 80817 with minor child C.M.3. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lynn Martinez and C.M.3 have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

69.    Plaintiff Lynn Martinez, individually and as parent and natural guardian of C.M.4, currently resides at 873 Marshall Drive, Fountain, CO 80817 with minor child C.M.4. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lynn Martinez and C.M.4 have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

70.    Plaintiff Christopher Martinez currently resides at 873 Marshall Drive, Fountain, CO 80817. As a result of Christopher Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christopher Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

71.    Plaintiff Alyssa Martinez currently resides at 873 Marshall Drive, Fountain, CO 80817. As a result of Alyssa Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs

in the drinking water supply, Alyssa Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

72.    Plaintiff Cameron Martinez currently resides at 873 Marshall Drive, Fountain, CO 80817. As a result of Cameron Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Cameron Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

73.    Plaintiff Alexis Esselman currently resides at 875 Foxwood Drive, Colorado Springs, CO 80911. As a result of Alexis Esselman's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Alexis Esselman has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

74.    Plaintiff Shelly-Ann Higgins currently owns and resides at 875 Foxwood Drive, Colorado Springs, CO 80911. As a result of Shelly-Ann Higgins's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Shelly-Ann Higgins has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Pregnancy Problems; Ulcerative Colitis.

75.    Plaintiff John Higgins currently owns and resides at 875 Foxwood Drive, Colorado Springs, CO 80911. As a result of John Higgins's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, John Higgins has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

76.    Plaintiff Ava Higgins currently resides at 875 Foxwood Drive, Colorado Springs, CO 80911. As a result of Ava Higgins's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ava Higgins has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

77.     Plaintiff Dawn Purkey currently resides at 875 Grand Avenue, Del Norte, CO 81132. As a result of Dawn Purkey's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dawn Purkey has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

78.     Plaintiff Denise Williams currently resides at 879 Daffodil Street, Fountain, CO 80817. As a result of Denise Williams's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Denise Williams has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

79.     Plaintiff Melissa Salser currently resides at 886 Legend Oak Drive, Fountain, CO 80817. As a result of Melissa Salser's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Melissa Salser has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

80.     Plaintiff Monika Malmquist currently owns and resides at 886 Legend Oak Drive, Fountain, CO 80817. As a result of Monika Malmquist's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Monika Malmquist has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid abnormalities.

81.     Plaintiff Daniel Malmquist currently resides at 886 Legion Oak Drive, Fountain, CO 80817. As a result of Daniel Malmquist's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Daniel Malmquist has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

82.     Plaintiff Kimberly Eckoldt currently owns and resides at 89 Rose Drive, Security, CO 80911. As a result of Kimberly Eckoldt's exposure to elevated levels of PFOA, PFOS, and/or

PFCs in the drinking water supply, Kimberly Eckoldt has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

83.    Plaintiff Kenneth Benjamin, Jr. currently owns and resides at 894 Rancher Drive, Fountain, CO 80817. As a result of Kenneth Benjamin, Jr.'s exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kenneth Benjamin, Jr. has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

84.    Plaintiff Mateo Robinson currently resides at 895 Lords Hill Drive, Fountain, CO 80817. As a result of Mateo Robinson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Mateo Robinson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

85.    Plaintiff Mark Robinson currently owns and resides at 895 Lords Hill drive, Fountain, CO 80817. As a result of Mark Robinson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Mark Robinson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

86.    Plaintiff Margo Rhine currently owns and resides at 897 Daffodil Street, Fountain, CO 80817. As a result of Margo Rhine's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Margo Rhine has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with high cholesterol.

87.    Plaintiff Robert Rhine currently owns and resides at 897 Daffodil Street, Fountain, CO 80817. As a result of Robert Rhine's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Rhine has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

88.    Plaintiff Michael Jones currently resides at 898 Candle Star Loop North, Fountain, CO 80817. As a result of Michael Jones's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michael Jones has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with Ulcerative Colitis.

89.    Plaintiff Randall Keiley currently owns and resides at 901 Hallam Avenue, Colorado Springs, CO 80911. As a result of Randall Keiley's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Randall Keiley has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diganosed with high cholesterol and thyroid disease.

90.    Plaintiff Jeff Frank currently owns and resides at 903 Daffodil St, Fountain, CO 80817. As a result of Jeff Frank's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jeff Frank has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Thyroid Problems.

91.    Plaintiff Patricia Frank currently owns and resides at 903 Daffodil Street, Fountain, CO 80817. As a result of Patricia Frank's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Patricia Frank has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Thyroid Problems.

92.    Plaintiff Angilo Vera currently resides at 905 Hubbell Dr, Colorado Springs, CO 80911. As a result of Angilo Vera's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Angilo Vera has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

93.    Plaintiff Efrain Vera-Soto currently owns and resides at 905 Hubble Drive, Colorado Springs, CO 80911. As a result of Efrain Vera-Soto's exposure to elevated levels of

PFOA, PFOS, and/or PFCs in the drinking water supply, Efrain Vera-Soto has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease and high cholesterol.

94.     Plaintiff Jasmine Kizer currently resides at 906 Candlestar Loop S, Fountain, CO 80817. As a result of Jasmine Kizer's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jasmine Kizer has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with pregnancy problems.

95.     Plaintiff Michael Matli currently resides at 906 Candlestar Loop S, Fountain, CO 80817. As a result of Michael Matli's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michael Matli has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

96.     Plaintiff Kimberly Chappell, individually and as parent and natural guardian of H.C.1, currently resides at 906 Drury Lane, Colorado Springs, CO 80911 with minor child H.C.1. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kimberly Chappell and H.C.1 have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

97.     Plaintiff Kimberly Chappell, individually and as parent and natural guardian of H.C.2, currently resides at 906 Drury Lane, Security, CO 80911 with minor child H.C.2. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kimberly Chappell and H.C.2 have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

98.     Plaintiff Kimberly Chappell, individually and as parent and natural guardian of S.C., currently resides at 906 Drury Lane, Security, CO 80911. As a result of their exposure to

elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kimberly Chappell and S.C. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

99.    Plaintiff Thomas Chappell currently resides at 906 Drury Lane, Security, CO 80911. As a result of Thomas Chappell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Chappell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

100.    Plaintiff Mary Morris currently resides at 906 Grinde Dr. Apt 118, Fountain, CO 80817. As a result of Mary Morris's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Mary Morris has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Thyroid Problems.

101.    Plaintiff Tina Farrell, individually and as parent and natural guardian of P.F., currently owns and resides at 906 Rancher Drive, Fountain, CO 80817 with minor child P.F. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Tina Farrell and P.F. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Tina Farrell has been diagnosed with High Cholesterol; Thyroid Problems.

102.    Plaintiff Jason Farrell currently resides at 906 Rancher Drive, Fountain, CO 80817. As a result of Jason Farrell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jason Farrell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

103.    Plaintiff Skyy Farrell currently resides at 906 Rancher Drive, Fountain, CO 80817. As a result of Skyy Farrell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Skyy Farrell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

104.   Plaintiff Cheyenne Farrell currently resides at 906 Rancher Drive, Fountain, CO 80817. As a result of Cheyenne Farrell's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Cheyenne Farrell has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

105.   Plaintiff Pete Martinez currently resides at 906 Rancher Drive, Fountain, CO 80817. As a result of Pete Martinez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Pete Martinez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

106.   Plaintiff Natasha Steinberg currently owns and resides at 909 Daffodil St., Fountain, CO 80817. As a result of Natasha Steinberg's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Natasha Steinberg has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

107.   Plaintiff Marva Monteith currently owns and resides at 909 Daffodil Street, Fountain, CO 80817. As a result of Marva Monteith's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marva Monteith has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

108.   Plaintiff Lilton Monteith currently owns and resides at 909 Daffodil Street, Fountain, CO 80817. As a result of Lilton Monteith's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lilton Monteith has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

109.   Plaintiff Catherine Zaborski currently resides at 909 Grinde Drive Apt 116, Fountain, CO 80817. As a result of Catherine Zaborski's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Catherine Zaborski has elevated levels of PFOA,

PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Kidney Cancer; Thyroid Problems.

110.     Plaintiff Karen Brant currently resides at 909 Grindy Drive D11, Fountain, CO 80817. As a result of Karen Brant's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Karen Brant has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

111.     Plaintiff Jeanne Basinger currently resides at 909 Square Dance Ln, Fountain, CO 80817. As a result of Jeanne Basinger's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jeanne Basinger has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

112.     Plaintiff Robbie Wooden currently owns and resides at 910 Cardinal Street Country Club Heights, Colorado Springs, CO 80911. As a result of Robbie Wooden's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robbie Wooden has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Thyroid Problems.

113.     Plaintiff William Wooden currently owns and resides at 910 Cardinal Street, Colorado Springs, CO 80911. As a result of William Wooden's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, William Wooden has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease and high cholesterol.

114.     Plaintiff Martha Scroggs currently owns and resides at 910 Withington Drive, Colorado Springs, CO 80911. As a result of Martha Scroggs's exposure to elevated levels of

PFOA, PFOS, and/or PFCs in the drinking water supply, Martha Scroggs has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

115.    Plaintiff Ralph Scroggs currently owns and resides at 910 Withington Drive, Colorado Springs, CO 80911. As a result of Ralph Scroggs's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ralph Scroggs has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

116.    Plaintiff David Harris currently resides at 913 South Sierra Madre, Colorado Springs, CO 80903. As a result of David Harris's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, David Harris has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

117.    Plaintiff Daniel Wallace currently resides at 914 Center Camino, Woodland Park, CO 80863. As a result of Daniel Wallace's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Daniel Wallace has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

118.    Plaintiff Derek Phillips currently resides at 914 Daffodil St, Fountain, CO 80817. As a result of Derek Phillips's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Derek Phillips has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

119.    Plaintiff Dana Phillips, individually and as parent and natural guardian of A.P., currently resides at 914 Daffodil Street, Fountain, CO 80817 with minor child A.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dana Phillips and A.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

120.    Plaintiff Deborah Phillips currently owns and resides at 914 Daffodil Street, Fountain, CO 80817. As a result of Deborah Phillips's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Deborah Phillips has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with Thyroid Problems.

121.    Plaintiff Dante Grey currently resides at 914 Pond Side Drive, Colorado Springs, CO 80911. As a result of Dante Grey's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dante Grey has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

122.    Plaintiff Arnette Booth currently owns and resides at 914 Pond Side Drive, Colorado Springs, CO 80911. As a result of Arnette Booth's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Arnette Booth has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease and high cholesterol.

123.    Plaintiff Bradley Buono currently owns and resides at 917 Square Dance Ln., Fountain, CO 80817. As a result of Bradley Buono's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Bradley Buono has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

124.    Plaintiff Christopher Wheeler currently resides at 920 Greenbrier Drive, Colorado Springs, CO 80916. As a result of Christopher Wheeler's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christopher Wheeler has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

125.    Plaintiff Travis Jacobs-Hofmann currently resides at 921 Grand Blvd, Colorado Springs, CO 80911. As a result of Travis Jacobs-Hofmann's exposure to elevated levels of PFOA,

PFOS, and/or PFCs in the drinking water supply, Travis Jacobs-Hofmann has elevated levels of

PFOA, PFOS, and/or PFCs in plaintiff's blood.

126.    Plaintiff Michele Brink currently resides at 921 Swope Avenue, Colorado Springs,

CO 80909. Plaintiff Michele Brink resided at 119 Widefield Blvd., Widefield, CO 80911 for all

times relevant herein. As a result of Michele Brink's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Michele Brink has elevated levels of PFOA, PFOS,

and/or PFCs in plaintiff's blood.

127.    Plaintiff Michael McBee currently resides at 921 Swope Avenue, Colorado

Springs, CO 80909. As a result of Michael McBee's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Michael McBee has elevated levels of PFOA, PFOS,

and/or PFCs in plaintiff's blood and has been diagnosed with thyroid abnormalities and high

cholesterol.

128.    Plaintiff Lyndel Felker currently resides at 923 Conejos St, Colorado Springs, CO

80903. As a result of Lyndel Felker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in

the drinking water supply, Lyndel Felker has elevated levels of PFOA, PFOS, and/or PFCs in

plaintiff's blood.

129.    Plaintiff Alicia Ornelas currently resides at 923 Conejos St, Colorado Springs, CO

80903. Plaintiff Alicia Ornelas resided at 955 Modell Dr., Colorado Springs, CO 80911 for all

times relevant herein. As a result of Alicia Ornelas's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Alicia Ornelas has elevated levels of PFOA, PFOS,

and/or PFCs in plaintiff's blood.

130.    Plaintiff Christine Felker currently resides at 923 Conejos Street, Colorado Springs,

CO 80903. Plaintiff Christine Felker resided at 955 Modell Dr., Colorado Springs, CO 80911 for

all times relevant herein. As a result of Christine Felker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christine Felker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

131. Plaintiff Kevin Felker currently resides at 923 Conejos Street, Colorado Springs, CO 80903. Plaintiff Kevin Felker resided at 955 Modell Dr., Colorado Springs, CO 80911 for all times relevant herein. As a result of Kevin Felker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kevin Felker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

132. Plaintiff Michelle Powers, individually and as parent and natural guardian of J.P., currently resides at 925 Binger Drive, Colorado Springs, CO 80911 with minor child J.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michelle Powers and J.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

133. Plaintiff Michelle Powers, individually and as parent and natural guardian of T.P., currently resides at 925 Binger Drive, Colorado Springs, CO 80911 with minor child T.P. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michelle Powers and T.P. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

134. Plaintiff Thomas Powers currently resides at 925 Binger Drive, Colorado Springs, CO 80911. As a result of Thomas Powers's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Powers has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

135. Plaintiff Virginia Medina currently owns and resides at 93 Massari Road, Pueblo, CO 81001. As a result of Virginia Medina's exposure to elevated levels of PFOA, PFOS, and/or

PFCs in the drinking water supply, Virginia Medina has elevated levels of PFOA, PFOS, and/or
PFCs in plaintiff's blood.

136.    Plaintiff Latischa Harris currently resides at 9309 Morfontaine Road, Peyton, CO
80831. As a result of Latischa Harris's exposure to elevated levels of PFOA, PFOS, and/or PFCs
in the drinking water supply, Latischa Harris has elevated levels of PFOA, PFOS, and/or PFCs in
plaintiff's blood.

137.    Plaintiff Melonie Stanton currently owns and resides at 9311 Abenida Hermosa
View, Fountain, CO 80817. As a result of Melonie Stanton's exposure to elevated levels of PFOA,
PFOS, and/or PFCs in the drinking water supply, Melonie Stanton has elevated levels of PFOA,
PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

138.    Plaintiff Leo Spagnolini currently owns and resides at 9311 Abenida Hermosa
View, Fountain, CO 80817. Plaintiff Leo Spanolini lived at 129 Ely Road, Colorado Springs, CO
80911 for all times relevant herein. As a result of Leo Spagnolini's exposure to elevated levels of
PFOA, PFOS, and/or PFCs in the drinking water supply, Leo Spagnolini has elevated levels of
PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol;
Thyroid Problems and has been diagnosed with high cholesterol.

139.    Plaintiff Shanna Vallejos currently resides at 933 Box Elder Street, Pueblo, CO
81004. As a result of Shanna Vallejos's exposure to elevated levels of PFOA, PFOS, and/or PFCs
in the drinking water supply, Shanna Vallejos has elevated levels of PFOA, PFOS, and/or PFCs in
plaintiff's blood.

140.    Plaintiff Melva Tillar currently owns and resides at 935 Harbourne Street, Colorado
Springs, CO 80911. As a result of Melva Tillar's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Melva Tillar has elevated levels of PFOA, PFOS, and/or

PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol.

141.    Plaintiff Jack Cummings currently owns and resides at 937 Desert Circle, Fountain,

CO 80817. As a result of Jack Cummings's exposure to elevated levels of PFOA, PFOS, and/or

PFCs in the drinking water supply, Jack Cummings has elevated levels of PFOA, PFOS, and/or

PFCs in plaintiff's blood.

142.    Plaintiff Michael Clark currently owns and resides at 9375 Day Star Terrace,

Colorado Springs, CO 80925. As a result of Michael Clark's exposure to elevated levels of PFOA,

PFOS, and/or PFCs in the drinking water supply, Michael Clark has elevated levels of PFOA,

PFOS, and/or PFCs in plaintiff's blood.

143.    Plaintiff Marie Clark currently owns and resides at 9375 Daystar Terrace, Colorado

Springs, CO 80925. As a result of Marie Clark's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Marie Clark has elevated levels of PFOA, PFOS, and/or

PFCs in plaintiff's blood.

144.    Plaintiff Amy Clark currently owns and resides at 9375 Daystar Terrace, Colorado

Springs, CO 80925. As a result of Amy Clark's exposure to elevated levels of PFOA, PFOS, and/or

PFCs in the drinking water supply, Amy Clark has elevated levels of PFOA, PFOS, and/or PFCs

in plaintiff's blood.

145.    Plaintiff Marion Garner currently owns and resides at 9387 Summer Meadows

Drive, Colorado Springs, CO 80925. As a result of Marion Garner's exposure to elevated levels

of PFOA, PFOS, and/or PFCs in the drinking water supply, Marion Garner has elevated levels of

PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease.

146.    Plaintiff Jill Schwyter currently owns and resides at 939 Candlestar Loop S, Fountain, CO 80817. As a result of Jill Schwyter's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jill Schwyter has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

147.    Plaintiff Max Schwyter currently owns and resides at 939 Candlestar Loop S, Fountain, CO 80817. As a result of Max Schwyter's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Max Schwyter has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

148.    Plaintiff Michelle Boyd currently resides at 9395 Trailside View Unit 202, Fountain, CO 80817. As a result of Michelle Boyd's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Michelle Boyd has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

149.    Plaintiff Larry Davidson currently owns and resides at 9470 Blue Grass Place, Colorado Springs, CO 80925. As a result of Larry Davidson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Larry Davidson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

150.    Plaintiff Thomas Grabe currently owns and resides at 9495 Summit Mesa Drive, Fountain, CO 80817. As a result of Thomas Grabe's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Grabe has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with ulcerative colitis.

151.    Plaintiff Mark Holtorf currently resides at 950 Crandall Drive, Colorado Springs, CO 80911. As a result of Mark Holtorf's exposure to elevated levels of PFOA, PFOS, and/or PFCs

in the drinking water supply, Mark Holtorf has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

152.    Plaintiff Patricia Moyers currently owns and resides at 950 Crandall Drive, Colorado Springs, CO 80911. As a result of Patricia Moyers's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Patricia Moyers has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease and high cholesterol.

153.    Plaintiff Marne Kosobucki, individually and as parent and natural guardian of K.K.1, currently resides at 9505 Sand Myrtle Drive, Colorado Springs, CO 80925 with minor child K.K.1. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marne Kosobucki and K.K.1 have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Marne Kosobucki has been diagnosed with High Cholesterol; Thyroid Problems.

154.    Plaintiff Marne Kosobucki, individually and as parent and natural guardian of K.K.2, currently resides at 9505 Sand Myrtle Drive, Colorado Springs, CO 80925 with minor child K.K.2. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marne Kosobucki and K.K.2 have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Marne Kosobucki has been diagnosed with High Cholesterol; Thyroid Problems.

155.    Plaintiff Isabelle Justice currently resides at 9515 Penn Cross Pl, Colorado Springs, CO 80925. As a result of Isabelle Justice's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Isabelle Justice has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

156.    Plaintiff Michelle Matheny currently resides at 9530 Poa Annua St, Colorado Springs, CO 80925. As a result of Michelle Matheny's exposure to elevated levels of PFOA,

PFOS, and/or PFCs in the drinking water supply, Michelle Matheny has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

157.    Plaintiff Lawrence Walker currently resides at 9534 Castle Oak Drive, Fountain, CO 80817. As a result of Lawrence Walker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lawrence Walker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

158.    Plaintiff Shawn Roberson currently owns and resides at 954 Antrim Loop, Colorado Springs, CO 80910. As a result of Shawn Roberson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Shawn Roberson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

159.    Plaintiff Robert Roberson currently owns and resides at 954 Antrim Loop, Colorado Springs, CO 80910. As a result of Robert Roberson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Roberson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

160.    Plaintiff Lisa P. Benjamin, individually and as parent and natural guardian of J.B., currently owns and resides at 9540 Holton Court, Fountain, CO 80817 with minor child J.B. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lisa P. Benjamin and J.B. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

161.    Plaintiff Christine Bertrand currently resides at 955 Evening Star Ct., Colorado Springs, CO 80910. As a result of Christine Bertrand's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Christine Bertrand has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

162.    Plaintiff Timothy Williams currently resides at 955 Hubbell Dr., Colorado Springs, CO 80911. As a result of Timothy Williams's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Timothy Williams has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

163.    Plaintiff Linnita Williams currently resides at 955 Hubbell Dr., Colorado Springs, CO 80911. As a result of Linnita Williams's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Linnita Williams has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

164.    Plaintiff Frances Gortmaker currently resides at 96 Davie Drive, Colorado Springs, CO 80911. As a result of Frances Gortmaker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Frances Gortmaker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

165.    Plaintiff Jerry Gortmaker currently resides at 96 Davie Drive, Colorado Springs, CO 80911. As a result of Jerry Gortmaker's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jerry Gortmaker has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

166.    Plaintiff Linda Crow currently owns and resides at 960 N Candlestar Loop, Fountain, CO 80817. As a result of Linda Crow's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Linda Crow has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid disease.

167.    Plaintiff Dawn Maslowski currently resides at 9624 Rockingham Drive, Peyton, CO 80831. Plaintiff Dawn Maslowski resided at 5185 Alturas Circle, Security, CO 80911 and 5020 Hopkins Drive, Security, CO 80911 for all times relevant herein. As a result of Dawn

Maslowski's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Dawn Maslowski has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

168.    Plaintiff David Maslowski currently resides at 9624 Rockingham Drive, Peyton, CO 80831. Plaintiff David Maslowski resided at 5185 Alturas Circle, Security, CO 80911 and 5020 Hopkins Drive, Security, CO 80911 As a result of David Maslowski's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, David Maslowski has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

169.    Plaintiff Maria Zakrzewski currently owns and resides at 9635 Bar B Road, Fountain, CO 80817. As a result of Maria Zakrzewski's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Maria Zakrzewski has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been dianosed with high cholesterol.

170.    Plaintiff John Vigil currently resides at 965 Daffodil Street, Fountain, CO 80817. As a result of John Vigil's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, John Vigil has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

171.    Plaintiff Terry Sunderlin currently owns and resides at 966 Daffodil Street Country Club Heights, Fountain, CO 80817. As a result of Terry Sunderlin's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Terry Sunderlin has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

172.    Plaintiff Rebecca Sunderlin currently owns and resides at 966 Daffodil Street, Fountain, CO 80817. As a result of Rebecca Sunderlin's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Rebecca Sunderlin has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

173.    Plaintiff Erica Neal currently resides at 967 Pond Side Drive, Colorado Springs, CO 80911. As a result of Erica Neal's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Erica Neal has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

174.    Plaintiff Robert Pena currently owns and resides at 97 Security Blvd, Colorado Springs, CO 80911. As a result of Robert Pena's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Robert Pena has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

175.    Plaintiff Clifford Knudson currently resides at 970 Bayfield Dr, Colorado Springs, CO 80906. As a result of Clifford Knudson's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Clifford Knudson has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

176.    Plaintiff Kathleen Burton currently resides at 971 White Stone Way, Fountain, CO 80817. As a result of Kathleen Burton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kathleen Burton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diagnosed with thyroid abnormalities.

177.    Plaintiff Thomas Burton currently owns and resides at 971 Whitestone Way, Fountain, CO 80817. As a result of Thomas Burton's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Burton has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

178.    Plaintiff Larry Price currently owns and resides at 977 Daffodil Street, Fountain, CO 80817. As a result of Larry Price's exposure to elevated levels of PFOA, PFOS, and/or PFCs

in the drinking water supply, Larry Price has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

179.    Plaintiff Daniel Florez currently resides at 9790 Rolling G Road, Fountain, CO 80817. As a result of Daniel Florez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Daniel Florez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

180.    Plaintiff Kristin Florez currently resides at 9790 Rolling G Road, Fountain, CO 80817. As a result of Kristin Florez's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kristin Florez has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

181.    Plaintiff Maren Comfort, individually and as parent and natural guardian of J.C.1, currently owns and resides at 980 Merry Vale Lane, Fountain, CO 80817 with minor child J.C.1. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Maren Comfort and J.C.1 have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Maren Comfort has been diagnosed with High Cholesterol.

182.    Plaintiff Maren Comfort, individually and as parent and natural guardian of J.C.2, currently owns and resides at 980 Merry Vale Lane, Fountain, CO 80817 with minor child J.C.2. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Maren Comfort and J.C.2 have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and Maren Comfort has been diagnosed with High Cholesterol.

183.    Plaintiff Jeffery Comfort currently owns and resides at 980 Merry Vale Lane, Fountain, CO 80817. As a result of Jeffery Comfort's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Jeffery Comfort has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

184.    Plaintiff John Moore currently owns and resides at 985 Daffodil Street, Fountain, CO 80817. As a result of John Moore's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, John Moore has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diganosed with high cholesterol.

185.    Plaintiff Glenna Moore currently owns and resides at 985 Daffodil Street, Fountain, CO 80817. As a result of Glenna Moore's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Glenna Moore has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood and has been diganosed with high cholesterol.

186.    Plaintiff Martha Krietemeyer currently owns and resides at 985 Turf Trail Court, Fountain, CO 80817. As a result of Martha Krietemeyer's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Martha Krietemeyer has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and has been diagnosed with High Cholesterol; Thyroid Problems.

187.    Plaintiff Daniel Kloberdanz currently resides at 990 Ridgebury Place, Fountain, CO 80817. As a result of Daniel Kloberdanz's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Daniel Kloberdanz has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

188.    Plaintiff Deborah Kloberdanz currently resides at 990 Ridgebury Place, Fountain, CO 80817. As a result of Deborah Kloberdanz's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Deborah Kloberdanz has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

189.    Plaintiff Ivan Engleman current resides in Green Mountain Falls, CO 80819. Plaintiff Ivan Engleman resided at 85 Everett Drive, Security, CO 80911 for all times relevant herein. As a result of Ivan Engleman's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Ivan Engleman has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

190.    Plaintiff Sharon Ostertag currently resides at 996 White Stone Way, Fountain, CO 80817. As a result of Sharon Ostertag's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Sharon Ostertag has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

191.    Plaintiff Kevin Daniels, Sr. currently resides at 5485 Alegre Drive, Fountain, CO 80817. As a result of Kevin Daniels, Sr.'s exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Kevin Daniels, Sr. has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

192.    Plaintiff Lorraine Balck currently resides at 12955 Old Pueblo Road, Fountain, CO 80817. As a result of Lorraine Balck's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Lorraine Balck has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

193.    Plaintiff Angel Wilmore, individually and as parent and natural guardian of D.W., currently resides in Calhan, CO 80808 with minor child D.W. As a result of their exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Angel Wilmore and D.W. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

194.    Plaintiff Angel Wilmore, individually and as parent and natural guardian of T.O., currently resides in Calhan, CO 80808 with minor child T.O. As a result of their exposure to

elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Angel Wilmore and

T.O. have elevated levels of PFOA, PFOS, and/or PFCs in their blood.

195.    Plaintiff Angel Wilmore, individually and as parent and natural guardian of N.W.,

currently resides in Calhan, CO 80808 with minor child N.W. As a result of their exposure to

elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Angel Wilmore and

N.W. have elevated levels of PFOA, PFOS, and/or PFCs in their blood, and N.W. has been

diagnosed with Thyroid Problems.

196.    Plaintiff Benjamin Wilmore currently resides in Calhan, CO 80808. As a result of

Benjamin Wilmore's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking

water supply, Benjamin Wilmore has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's

blood.

197.    Plaintiff Athel Bluebird currently resides in Fountain, CO 80817. As a result of

Athel Bluebird's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water

supply, Athel Bluebird has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood, and

has been diagnosed with High Cholesterol.

198.    Plaintiff Timothy Clubb currently resides at 516 Acoma Drive, Colorado Springs,

CO 80935. As a result of Timothy Clubb's exposure to elevated levels of PFOA, PFOS, and/or

PFCs in the drinking water supply, Timothy Clubb has elevated levels of PFOA, PFOS, and/or

PFCs in plaintiff's blood.

199.    Plaintiff Dennis Crow currently resides at 6630 Cottonwood Grove Dr., Colorado

Springs, CO 80925. As a result of Dennis Crow's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Dennis Crow has elevated levels of PFOA, PFOS, and/or

PFCs in plaintiff's blood.

200.    Plaintiff Thomas Hochberg currently resides in Colorado Springs, CO 80931. Plaintiff Thomas Hochberg lived at 7331 Metropolitan St., Colorado Springs, CO 80911 and 255 Fleming St., Colorado Springs, CO 80911 for all times relevant herein. As a result of Thomas Hochberg's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Thomas Hochberg has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

201.    Plaintiff Marie Engleman currently resides in Green Mountain Falls, CO 80819. Plaintiff Marie Engleman resided at 85 Everett Drive, Security CO, 80911, 92 Everett Drive, Security, CO, 80911, 54 Otowi Drive, Security, CO 80911, 74 Otowi Drive, Security, CO 80911, and 193 Norman Dr., Security, CO 80911 for all times relevant herein. As a result of Marie Engleman's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Marie Engleman has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

202.    Plaintiff Justine Hanneman currently resides in Atwood, CO 80722. Plaintiff Justine Hanneman lived in the Security, Widefield, and Fountain area for all times relevant herein. As a result of Justine Hanneman's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Justine Hanneman has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

203.    Plaintiff Jose Santiago currently owns and resides at 3360 Simmelink Loop, Colorado Springs, CO 80916. As a result of Jose Santiago's exposure to elevated levels of PFOA, PFOS, and/or PFCs in the drinking water supply, Jose Santiago has elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

204.    Plaintiff Kathy Coleman owns and resides at 1125 Hallamwood Drive, Colorado Springs, CO 80911. As a result of Kathy Coleman's exposure to elevated levels of PFOA, PFOS,

and/or PFCs in the drinking water supply, Kathy Coleman had elevated levels of PFOA, PFOS, and/or PFCs in plaintiff's blood.

## **Defendants**

205.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

206.    The term "Defendant" or "Defendants" refers to all Defendants named herein jointly and severally.

207.    Upon information and belief, each of the Defendants are responsible, negligently, intentionally, and/or in some actionable manner, for the events and happenings referred to herein, and caused and continue to cause injuries and damages legally thereby to Plaintiffs, as alleged, either through each Defendant's own conduct or through the conduct of their agents, servants, or employees, or due to the ownership, maintenance, or control of the instrumentality causing them injury, or in some other actionable manner.

208.    Defendant THE 3M COMPANY ("3M") is, upon information and belief, an American multinational corporation based in Maplewood, Minnesota and incorporated in Delaware. 3M was founded in 1902 as the Minnesota Mining and Manufacturing Company. With approximately $30 billion in annual net sales, 3M employs approximately 90,000 people, operates in approximately 70 countries, and produces more than 55,000 products. 3M does business throughout the United States, including in the state of Colorado.

41

209.    3M designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations.

210.    3M is engaged in substantial and not isolated activity in this State; all as more fully alleged herein.

211.    Defendant TYCO FIRE PRODUCTS L.P., successor in interest to THE ANSUL COMPANY ("TYCO"), is a Delaware corporation having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143. TYCO manufactured and currently manufactures the ANSUL brand of products, including ANSUL brand AFFF.

212.    Defendant TYCO was incorporated as a limited partnership on December 15, 2000. The name and mailing address of the sole general partner is Fire Products GP Holding, Inc. Fire Products GP Holding, Inc., is a New Jersey corporation having its principal place of business at 9 Roszel Road, Princeton, NJ 08540.

213.    Upon information and belief, Defendant TYCO is the successor in interest to the corporation formerly known as THE ANSUL COMPANY ("ANSUL"). This Complaint shall collectively refer to ANSUL and/or TYCO as the successor in interest to ANSUL as "TYCO/ANSUL." At all times relevant, TYCO/ANSUL designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations.

214.    Defendant BUCKEYE FIRE EQUIPMENT COMPANY ("BUCKEYE") is an Ohio corporation with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

215.    At all times relevant to the present litigation, BUCKEYE designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

216.     Defendant CHEMGUARD is a Texas corporation having its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

217.     At all times relevant to the present litigation, CHEMGUARD designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

218.     Defendant NATIONAL FOAM, INC. ("NATIONAL FOAM") is a Delaware corporation having a principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382. At all times relevant, NATIONAL FOAM designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

219.     Defendant KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOAM, INC., f/k/a NATIONAL FOAM INC., is a Pennsylvania corporation having a principal place of business at One Carrie Place, Farmington, Connecticut. At all times relevant, KIDDE FIRE FIGHTING, INC. designed, manufactured and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

220.     KIDDE FIRE FIGHTING, INC., is sued individually, and as successor in interest to NATIONAL FOAM, INC.

221.     KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., is a Massachusetts corporation having a principal place of business at One Carrier Place, Farmington, Connecticut 06302. At all times relevant, KIDDE PLC, INC. designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

222.     KIDDE PLC, INC., is sued individually, as a successor in interest to NATIONAL FOAM, INC.

223.    Upon information and belief, WILLIAMS HOLDINGS, INC. was incorporated on October 10, 1987, and later dissolved on December 31, 1990. Upon information and belief, John F. Hannon was the CEO and Secretary of WILLIAMS HOLDINGS, INC. At all times relevant, WILLIAMS HOLDINGS, INC. designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

224.    Upon information and belief, WILLIAMS CORPORATION was founded in 1997, and dissolved on October 26, 2000. Upon information and belief, John F. Hannon was the CEO of Williams Corporation, as well as the Treasurer of KIDDE FIRE FIGHTING, INC. prior to the dissolution of Williams Corporation.

225.    Upon information and belief, WILLIAMS HOLDINGS, INC., a Delaware corporation, filed as a foreign corporation with the Massachusetts Secretary of State on June 2, 1987.

226.    Upon information and belief, John F. Hannon changed the name of WILLIAMS HOLDINGS, INC. to WILLIAMS HOLDINGS US, INC., on February 12, 1998.

227.    Upon information and belief, WILLIAMS HOLDINGS US, INC. became KIDDE PLC, INC. on November 15, 2000.

228.    WILLIAMS HOLDINGS, INC. is named as successor in interest to NATIONAL FOAM, INC.

229.    KIDDE-FENWAL, INC. is a Massachusetts corporation with its principal place of business at 400 Main Street, Ashland, Massachusetts 01721. At all times relevant, KIDDE-FENWAL, INC. designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

230.    Upon information and belief, Fenwal, Inc. was incorporated on June 21, 1988, and later changed its name to KIDDE-FENWAL, INC.

231.    Upon information and belief, the Canadian Intellectual Property Office has registered the NATIONAL FOAM trademark to KIDDE-FENWAL, INC., formerly registered to KIDDE FIRE FIGHTING, INC.

232.    KIDDE-FENWAL, INC., is sued individually, and as successor in interest to NATIONAL FOAM, INC.

233.    UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC., is a North Carolina corporation with its principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. At all times relevant, UTC FIRE & SECURITY AMERICAS CORPORATION, INC. designed, manufactured and sold AFFF used for training operations and fighting fires including at PAFB.

234.    Upon information and belief, KIDDE-FENWAL, INC. is part of the UTC CLIMATE CONTROL & SECURITY unit of United Technologies Corporation.

235.    UTC FIRE & SECURITY AMERICAS CORPORATION, INC., is sued individually, and as successor in interest to NATIONAL FOAM, INC.

236.    NATIONAL FOAM, INC.; KIDDE FIRE FIGHTING, INC., f/k/a CHUBB NATIONAL FOAM, INC., f/k/a NATIONAL FOAM INC., individually and as successor in interest to NATIONAL FOAM, INC.; KIDDE PLC, INC., f/k/a WILLIAMS US INC., f/k/a WILLIAMS HOLDINGS, INC., individually and as successor in interest to NATIONAL FOAM, INC.; KIDDE-FENWAL, INC., individually and as successor in interest to NATIONAL FOAM, INC.; UTC FIRE & SECURITY AMERICAS CORPORATION, INC., f/k/a GE INTERLOGIX, INC.; shall collectively be referred to herein as "NATIONAL FOAM."

237.    At all times relevant to the present litigation, NATIONAL FOAM designed, manufactured, and sold AFFF used in training operations and for emergency fire-fighting situations including at PAFB.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

238.    AFFF is a Class-B fire-fighting foam that is mixed with water and used to extinguish fires that are difficult to fight, including those involving hydrocarbon fuels such as petroleum or other flammable liquids.

239.    AFFF is synthetically formed by combining fluorine free hydrocarbon foaming agents with surfactants. When mixed with water, the resulting solution produces an aqueous film that spreads across the surface of hydrocarbon fuel. This film provides fire extinguishment and is the source of the designation "aqueous film forming foam."

240.    AFFF has the presence of fluorinated surfactants that lower the water's surface tension, essentially smothering the fire and starving it of its oxygen.

241.    Some fluorinated surfactants have unique properties that cause some of the compounds to persist in the environment and toxically bioaccumulate in animals and humans.

242.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and in many parts of the world.

243.    Defendants 3M, TYCO/ANSUL, NATIONAL FOAM, CHEMGUARD and BUCKEYE designed, manufactured, and sold AFFF that was used at the PAFB.

244.    The United States Navy first used AFFF in 1963, with the USAF commencing its use of AFFF in 1970.

245.    In the foam industry, concentrates are typically referred to as "3%" or "6%" concentrate, depending on the mixture rate with water. AFFF concentrates contain about 60-90% water and have a fluorine content of about 0.3-1.8%.

246.    The USAF uses 3% AFFF for its installations.

247.    Fluorosurfactants used in 3M's AFFF were produced by a unique and patented process known as electrochemical fluorination ("ECF"). The ECF process resulted in a product that contains PFOS, some of which degrades into PFOA.

248.    3M was the only company to manufacture PFOS-containing AFFF.

249.    In an attempt to limit liability, 3M opted to stop producing PFOS in 2002 because it was aware of the widespread contamination and the health effects on the American public associated with exposure to the contamination.

250.    Like PFOS, PFOA is a man-made, manufactured chemical not found in nature. PFOA was used to make household and commercial products that resist heat and chemical reactions, and can be used to repel oil, stains, grease, and water.

251.    In 1947, 3M began producing PFOA via ECF.

252.    In 1951, 3M began selling its PFOA to other chemical companies, including DuPont.

253.    Other companies, including Defendants TYCO/ANSUL, BUCKEYE, NATIONAL FOAM, and CHEMGUARD, began manufacturing AFFF using PFOA that they produced themselves or purchased from other companies. Defendants then sold AFFF to the USAF for use at installations across the nation, including PAFB.

254.    The chemical structure of PFOA and PFOS make them resistant to breakdown or environmental degradation. As a result, they are persistent when released into the environment.

47

255. PFOA and PFOS have been found to bioaccumulate in humans and animals. In 2005, the United States Department of Health and Human Services found that "human exposure to PFOA and PFOS lead to the buildup of these chemicals in the body."

256. By the early 1960s, 3M knew that PFOS and PFOA were stable, persistent in the environment, and did not degrade.

257. As a result of this persistence, PFOA can remain in the environment, particularly in water, for many years and can move through air, soil, and into groundwater.

258. Early studies showed that PFCs accumulated in the human body and were toxic.

259. 3M studies from the 1970s concluded that PFCs were "even more toxic" than previously believed.

260. 3M knew that PFOA is readily absorbed after consumption or inhalation, and it accumulates primarily in the blood stream, kidney, and liver.

261. Upon information and belief, by the 1970s, 3M knew that PFOA and PFOS were widely present in the blood of the general U.S. population. Upon information and belief, 3M concealed this knowledge from the public and government regulators, including those officials responsible for buying and supplying PAFB with AFFF.

262. In or about 1977, TYCO/ANSUL was also aware of the environmental and toxic effects of AFFF and studied whether it could develop an AFFF that produced less of an environmental impact.

263. Because of PFOA's toxicity, eight major PFOA manufacturers agreed in 2006 to participate in the USEPA's PFOA Stewardship Program. The participating companies made voluntary commitments to reduce product content and facility emissions of PFOA and related chemicals by 95% no later than 2010.

48

264.    Human studies show associations between increased PFOA levels in blood and an increased risk of developing numerous serious medical conditions, including high cholesterol levels, changes in thyroid hormone, ulcerative colitis (autoimmune disease), pre-eclampsia (a complication of pregnancy that includes high blood pressure), and kidney and testicular cancer.

265.    These injuries can arise months or years after exposure to PFOA.

266.    As alleged herein, the adverse health effects observed following exposure to PFOS are the same as those observed with PFOA, meaning injuries associated with PFOS exposure and accumulation similarly manifest themselves months or years after the initial exposure.

267.    Given the extreme persistence of PFOS and PFOA in the environment, these chemicals' toxicity, mobility, and bioaccumulation potential has created an ongoing and concrete threat to the health of the residents in the Communities.

**AFFF Usage at Peterson Air Force Base and the Colorado Springs Municipal Airport.**

268.    Upon information and belief, Defendants each manufactured AFFF containing PFCs for sale to the DOD or the USAF with knowledge that AFFF would be used in training operations and for emergency fire-fighting situations.

269.    Upon information and belief, Defendants' AFFF products were sold to and used at PAFB.

270.    At any given time, the Defendants were responsible for the design, manufacture, and sale of thousands of gallons of AFFF concentrate used and stored at PAFB.

271.    The AFFF was expected to and did reach PAFB without substantial change in the condition in which the Defendants sold it.

49

272.    For decades, USAF personnel used AFFF designed, manufactured, and sold by each of the Defendants for training operations at the PAFB, including fire-fighting and explosion training.

273.    Due to these training operations, AFFF was released into the surrounding air, soil, and groundwater at locations including but not limited to the current fire training area ("FTA") (1991 to date), the former FTA known as Site 5 (1960 through 1977), and the former FTA known as Site 8 (1977 to 1991).

274.    AFFF was additionally introduced into the groundwater via aircraft hangers containing fire suppression systems that used AFFF. During function testing or false alarms, AFFF was permitted to enter the air, soil, and groundwater, further contaminating Plaintiffs' drinking water.

275.    At PAFB, two fire stations conduct spray testing with AFFF, releasing AFFF into the soil, air, and groundwater.

276.    In November 2016, the U.S. Army Corps of Engineers published "Revised Final Preliminary Assessment Report for Perfluorinated Compounds at Peterson Air Force Base," a report that confirmed the use of AFFF at PAFB and identified fire training areas at PAFB as possible sources of PFC contamination of the Communities' groundwater supply.

277.    As a direct and proximate result of the failure to warn the USAF, PAFB, or the surrounding Communities, including those most sensitive to contamination, AFFF and its constituents were permitted to enter the air, soil, and groundwater, ultimately entering the Plaintiffs' bodies and properties.

278.    Upon information and belief, instructions, warning labels, and material safety data sheets that Defendants provided with the AFFF did not reasonably nor adequately describe the health and environmental hazards of AFFF that Defendants knew or should have known.

**AFFF Containing PFOA and PFOS is Fungible and Commingled in the Groundwater**

279.    Once AFFF containing PFOA and PFOS has been released into the environment, it lacks characteristics that would otherwise enable the identification of the company that manufactured that particular batch of AFFF.

280.    Decades of manufacturing, selling, and distributing AFFF has created complex and opaque arrangements whereby Defendants regularly contract with multiple entities, including the DOD, the USAF, specific installations, and/or third-party logistic intermediaries, to sell and deliver AFFF to bases throughout the country, including to PAFB.

281.    A subsurface plume, even if it comes from a single location, such as a retention pond or fire training area, originates from mixed batches of AFFF coming from different manufacturers.

282.    At PAFB, AFFF from different manufacturers was used at multiple training sites over the course of many years, rendering it impossible for investigators to identify with any certainty the exact AFFF product that produced the PFOA or PFOS at issue.

283.    Even if investigators could track the source of a subsurface plume to a single location at PAFB, it would be impossible to identify how an individual Defendants' AFFF contributed to the contamination because of how AFFF was used, stored, and disposed of at those locations.

284.    The case at PAFB is typical of PFOA and PFOS contamination cases generally: even though several areas were located at PAFB where the AFFF was used and entered the

groundwater, neither the federal or state investigators could determine which manufacturers'
AFFF containing PFOA and PFOS had contributed to the resulting groundwater contamination
plume.

285.    PFOA and PFOS are present in all Defendants' AFFF products.

286.    Because precise identification of the manufacturer of the specific AFFF that was
the source of PFOA and PFOS found in a Plaintiff's blood and groundwater is impossible, and the
market for AFFF is ascertainable, Plaintiffs must pursue all Defendants, jointly and severally, for
those indivisible injuries which Defendants have collectively visited upon Plaintiffs.

287.    Defendants are also jointly and severally liable because they conspired to conceal
the true toxic nature of PFOA and PFOS, to profit from the use of AFFF containing PFOA and
PFOS, at Plaintiffs' expense, to contaminate Plaintiffs' drinking water supply, and to attempt to
avoid liability for such contamination of the groundwater and poisoning of the Plaintiffs.

## MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, ENTERPRISE LIABILITY

288.    Upon information and belief, Defendants in this action are manufacturers that
control a substantial share of the market for AFFF containing PFOA and PFOS in the United States
and are jointly responsible for the contamination of the groundwater in the Communities and for
causing the damages and injuries complained of in this Complaint.

289.    Each of these Defendants participated in a state-wide and national market for AFFF
containing PFOA and/or PFOS during the relevant time.

290.    Market share liability attaches to all Defendants and the liability of each should be
assigned according to each Defendant's percentage share of the market for AFFF-containing
PFOA and/or PFOS at issue in this Complaint. As alleged in paragraphs 155-163, PFOA and PFOS

is fungible; it is impossible to identify the exact Defendant who manufactured the particular AFFF containing PFOA and/or PFOS that has contaminated the air, soil or groundwater.

291.    The relevant product and geographic market can be defined in this instance because the market for AFFF consists of only one buyer, PAFB via the USAF, who used this product for only one purpose, to fight fires.

292.    The market for AFFF is ascertainable through standard discovery means.

293.    It would be unfair to require Plaintiffs to bear the entire cost of their injuries simply because it is inherently impossible for the Plaintiffs to identify the exact Defendant that has manufactured the product that has contaminated the water supply and gives rise the injuries complained of in this action.

294.    Alternatively, as a result of Defendants' participation in the fire-fighting foam industry through the production, sale, and distribution of AFFF containing PFOA and PFOS, enterprise liability attaches to all of the named Defendants for casting defective products into the stream of commerce.

## CONSPIRACY

295.    Defendants actually knew of the health and environmental hazards which PFOA and PFOS posed to Plaintiffs.

296.    Beginning in the 1970s and continuing through the date of this Complaint, Defendants formed joint task forces, committees and otherwise colluded for the avowed purpose of providing information about AFFF-containing PFOA and/or PFOS to the public and to government agencies with the unlawful purpose of:

297.    Creating a market for AFFF-containing PFOA and/or PFOS despite knowledge of the hazards which PFOA and PFOS posed to the groundwater in Colorado and the residents who depend on such water;

298.    Concealing the environmental properties and toxic nature of PFOA and PFOS, and its impact on Plaintiffs and the environment; and

299.    Maximizing profits in a way Defendants knew or should have known would result in the contamination of Plaintiffs' drinking water.

300.    Defendants carried out their conspiracy by one or more of the following overt acts or omissions:

301.    Intentionally representing to the DOD, USAF, USEPA and the public that AFFF containing PFOA and PFOS was safe and did not pose an environmental or human health risk;

302.    Concealing the dangers of PFOA and PFOS (including toxicological information on the dangers of the chemicals to living organisms, adverse fate and transport characteristics, and the propensity of PFOA and PFOS to contaminate groundwater) from the government and the public by, among other means, repeatedly requesting that information about the dangers and health effects of PFOA and PFOS be suppressed and not otherwise published, and by downplaying any adverse findings relating to PFOA and PFOS;

303.    Concealing the dangers of AFFF containing PFOA and PFOS from end users, sensitive receptors, public water suppliers, and the users and consumers of groundwater;

304.    Using their considerable resources to fight PFOA and PFOS regulation; and

305.    Collectively deciding to use PFOA and/or PFOS rather than other, safer surfactants because AFFF-containing PFOA and/or PFOS were the most profitable surfactant for Defendants to use.

306.     As a direct and proximate result of the Defendants' above described conspiracy, PFOA and PFOS, at all times relevant to this litigation has:

307.     Posed and continues to pose a health threat to Plaintiffs because it has bioaccumulated in their bodies;

308.     Created the need for testing and monitoring of Plaintiffs' health for known adverse health effects of PFOA and PFOS;

309.     Contaminated Plaintiffs' property, soil, and groundwater, for those with private water wells;

310.     Created the need for remediation of PFOA- and PFOS- contaminated groundwater for those property owners who utilize private water wells, or, where remediation of the groundwater is impractical, installation of a system to filter out PFOA and PFOS or procurement of water from alternative sources; and

311.     Diminished, and will continue to diminish, the values of Plaintiffs' properties due to past, actual, impending, or threatened contamination.

## CAUSES OF ACTION FOR INDIVIDUAL CLAIMS
## AS AND FOR A FIRST CAUSE OF ACTION: NEGLIGENCE

312.     Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

313.     This cause of action is brought pursuant to Colorado law.

314.     Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to human health.

315.     Given that Defendants were aware of these chemicals' potential for bioaccumulation in humans as well as the links to numerous serious medical conditions, including

cancer, Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would be hazardous to human health.

316.    Defendants knew or should have known that PFCs are highly soluble in water, highly mobile, extremely persistent in the environment, and therefore high likely to contaminate water supplies if released into the environment.

317.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would result in the contamination of the municipal and private well drinking water supplies of the Communities given their proximity to PAFB.

318.    Defendants marketed and sold their products with knowledge that AFFF containing PFCs would be used in training exercises and in emergency fire-fighting situations, including at PAFB, in such a manner that these dangerous chemicals would be released into the environment.

319.    Defendants marketed and sold their products with knowledge that AFFF containing toxic PFCs would be stored in fire suppressant systems and tanks on USAF Bases and at airports, including PAFB, and that such systems and storage were used and maintained in such a manner that dangerous chemicals would be released into the environment.

320.    Knowing of the dangerous and hazardous properties of AFFF, and the manner in which AFFF would be used, stored, and maintained at PAFB, it was foreseeable that AFFF would contaminate the surrounding environment, groundwater, and drinking water supplies of Fountain, Security, and Widefield, as a result of the Communities' proximity to PAFB.

321.    Defendants therefore knew or should have known that safety precautions would be required to prevent the release of PFOA and PFOS into the surrounding groundwater and drinking water supplies.

322.    Given the foreseeability of AFFF's release into the surrounding Communities' drinking water, Defendants should have acted reasonably by not placing inherently dangerous AFFF into the marketplace.

323.    Though AFFF is effective at extinguishing otherwise difficult to fight fires, the potential for widespread and persistent contamination of municipal and private well water supplies with chemicals linked to the development of numerous serious medical conditions far outweighs any social utility gained from AFFF's fire-fighting ability.

324.    The magnitude of the burden on the Defendants to guard against this foreseeable harm to Plaintiffs was minimal, as the practical consequences of placing this burden on the Defendants amounted to providing adequate instructions, proper labeling, and sufficient warnings about their AFFF products.

325.    As manufacturers, Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF products.

326.    Considering the factors related to risk, foreseeability, social utility, the burden of guarding against the harm, and the practical consequences of placing that burden on the Defendants, the Defendants therefore owed multiple cognizable duties to Plaintiffs.

327.    Defendants had a duty not to contaminate the Plaintiffs' municipal and private well drinking water supplies, as well as the surrounding environment and groundwater, with AFFF containing PFCs.

328.    Defendants had a duty to warn of the hazards associated with AFFF containing PFCs entering and poisoning the environment and groundwater.

329.    As manufacturers, marketers, and sellers of AFFF, Defendants owed Plaintiffs a duty to exercise reasonable care and ensure that AFFF was manufactured, marketed, and sold in

such a way that the end users of AFFF were aware of the potential harm PFOA and PFOS could cause to human health and the environment.

330.    Upon learning of the release of the contaminants, Defendants owed Plaintiffs a duty to warn and notify Plaintiffs of the release of the contaminants before they injured Plaintiffs and their property and/or to act reasonably to minimize the damage to Plaintiffs and their property.

331.    As such, the Defendants, acting negligently, recklessly, willfully, wantonly, and/or intentionally, breached their legal duties to Plaintiffs, causing the contamination of the municipal and private well drinking water supplies in and around the residences of Plaintiffs.

332.    Defendants breached their duty to warn and notify end users of AFFF about the danger that PFOA and PFOS could enter into the environment and groundwater.

333.    Defendants breached their duty to warn by failing to notify Plaintiffs in a timely manner that PFOA and PFOS had contaminated the municipal and private well drinking water supplies.

334.    Defendants breached their duty not to contaminate the Plaintiffs' drinking water supplies by allowing PFOA and PFOS to be released into the municipal and private well drinking water supplies of Fountain, Security, and Widefield.

335.    Defendants breached their duties to act reasonably by failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

336.    Defendants' breaches of their duties were direct and proximate causes of the drinking water in both the municipal and private well supplies to become contaminated with unsafe and dangerous levels of PFOA and PFOS.

337.     Defendants' breaches of their duties were direct and proximate causes of the injuries, damages, and harm the Plaintiffs have suffered to their health and property.

338.     Defendants' breach of their duty to act reasonably and timely notify and warn the Communities of the presence of PFOA and PFOS in the groundwater directly and proximately prevented Plaintiffs from undertaking effective and immediate remedial measures.

339.     Plaintiffs have expended and/or will be required to expend significant financial resources to test and monitor for the presence of latent diseases for many years because of Defendants' conduct.

340.     Plaintiffs have expended and/or will be required to expend significant financial resources to remediate the effects of Defendants' conduct on their homes and property for many years.

341.     Plaintiffs suffered foreseeable injuries and damages as a proximate result of Defendants' breach of their duties as set forth above. At the time Defendants breached their duties to Plaintiffs, Defendants' acts and/or failures to act posed recognizable and foreseeable possibilities of danger to Plaintiffs so apparent as to entitle them to be protected against such actions or inactions.

342.     Accordingly, Plaintiffs seek damages from Defendants, in an amount to be determined at trial, directly resulting from injuries to their persons and property, in a sufficient amount to compensate them for the injuries and losses sustained and to restore Plaintiffs to their original position, including but not limited to the difference between the current value of their properties and such value if the harm had not been done, the cost of repair or restoration, the value of the use of the continuous trespass, injuries to persons, including the need for medical monitoring as an element of damages, and actual, consequential, and nominal damages, flowing from the

negligence that are the natural and proximate result of Defendants conduct in an amount to be proved at trial.

### AS AND FOR A SECOND CAUSE OF ACTION: MEDICAL MONITORING

343. Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

344. This cause of action is brought pursuant to Colorado law.

345. In Colorado, a claim for medical monitoring requires a Plaintiff to establish that: (1) Plaintiff has suffered a significant exposure to a hazardous substance through the tortious actions of defendant; (2) as a proximate result of this exposure, Plaintiff suffers from an increased risk of contracting a serious latent disease; (3) that increased risk makes periodic diagnostic medical examinations reasonably necessary; and (4) monitoring and testing procedures exist which make the early detection and treatment of the disease possible and beneficial.

346. Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would result in the contamination of the municipal and private well drinking water supplies of Fountain, Security, and Widefield, due to these communities' proximity to PAFB.

347. Defendants knew or should have known that exposing humans to PFC-contaminated water would be hazardous to human health and the environment.

348. Years of consuming PFC-contaminated water has exposed the Plaintiffs to PFOA, PFOS, and potentially other toxic substances as a result of the use, storage, and discharge of AFFF at PAFB.

349.    As alleged in this Complaint, given the persistence and bioaccumulative nature of PFOA and PFOS, PFOA and PFOS exposure leads to the bioaccumulation of PFOA and PFOS in the blood of humans exposed to water contaminated with PFOA and PFOS.

350.    Plaintiffs have suffered an injury due to the bioaccumulation of these hazardous substances in their blood.

351.    Furthermore, individuals with elevated levels of PFOA and PFOS in their blood, such as the Plaintiffs, are at a seriously increased risk of contracting numerous medical conditions, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), and hypercholesterolemia.

352.    Medical tests currently exist that can determine the level of PFOA and PFOS in the blood of an individual who has consumed PFOA- and PFOS- contaminated water.

353.    Given that exposure to and bioaccumulation of elevated levels of PFOA and PFOS in an individual's blood significantly increases the risk of contracting a serious medical condition, periodic medical examinations are both reasonable and necessary to detect latent diseases.

354.    A thorough medical monitoring plan, following common and accepted medical practices, can and should be developed for Plaintiffs to assist in the early detection and beneficial treatment of the diseases that can develop as a result of exposure to and bioaccumulation of PFOA and PFOS.

## AS AND FOR A THIRD CAUSE OF ACTION: STRICT PRODUCTS LIABILITY – FAILURE TO WARN

355.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

356.    This cause of action is brought pursuant to Colorado law.

357.    As commercial manufacturers, sellers, and distributors of AFFF, Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to human health and the environment.

358.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs was hazardous to human health and the environment.

359.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling AFFF containing PFCs would result in the contamination of the Communities' municipal and private well water supplies as a result of the Communities' proximity to PAFB.

360.    AFFF's persistence, mobility, bioaccumulative potential, and PFOA's and PFOS' links to numerous serious medical conditions, are not open and obvious conditions.

361.    Though Defendants knew or should have known about the seriousness of the consequences of failing to warn about the inherent dangers associated with AFFF containing PFOA and PFOS, Defendants failed to warn PAFB of the dangers inherent in the use of the product.

362.    Though Defendants knew or should have known about the reasonably foreseeable hazards to human health and welfare associated with the use of AFFF containing PFOA and PFOS in the vicinity of Plaintiffs' drinking water supplies, including contamination of public drinking water and private wells with PFOA and PFOS, Defendants failed to provide adequate warnings of, or take any precautionary measures to mitigate, those hazards.

363. Defendants failed to provide sufficient warning that the use and storage of Defendants' product would cause the product to be released into the environment and cause the PFOA and PFOS contamination of the environment, groundwater, and drinking water.

364. Adequate instructions and warnings on the AFFF products could have reduced or avoided these foreseeable risks of harm to Plaintiffs, and their properties.

365. Had Defendants provided adequate warnings, Plaintiffs could have taken measures to avoid or lessen their exposure.

366. Had Defendants provided adequate warnings, PAFB could have taken measures to reduce or prevent the release of PFOA and PFOS into the environment, groundwater, and drinking water.

367. Defendants' failure to provide adequate and sufficient warnings for the AFFF that they manufactured, marketed, and sold renders the AFFF a defective product.

368. Defendants' failure to warn was a direct and proximate cause of the environmental and health impacts from PFOA and PFOS that came from the use, storage and disposal of AFFF at PAFB.

369. Defendants' failure to warn was the direct and proximate result of the contamination, leading to the diminution in the value and marketability of the properties of the Plaintiffs. Plaintiffs have suffered the need for and the cost of remediation of their properties and mitigation systems for those properties, and the cost of alterative water.

370. As a result of the contamination, Plaintiffs have lost use and enjoyment of their properties and have suffered annoyance, discomfort, and inconvenience as a consequence of the contamination of their properties by Defendants.

371.   As a result of Defendants' conduct and the resulting contamination, Plaintiffs have been injured in that their exposure to PFOA, PFOS, and potentially other toxic substances has produced an increased level of PFOA and PFOS in their blood stream, leading to the bioaccumulation of PFOA and PFOS in their bodies and significantly increasing their risk of developing numerous serious medical conditions.

372.   As a result of Defendants manufacture, sale, or distribution of a defective product, Defendants are strictly liable in damages to Plaintiffs.

373.   Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs.

## AS AND FOR A FOURTH CAUSE OF ACTION: STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN

374.   Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

375.   This cause of action is brought pursuant to Colorado law.

376.   By virtue of manufacturing, marketing, and selling AFFF containing PFOA and PFOS, Defendants had a strict duty not to place an unreasonably dangerous product into the stream of commerce that would injure innocent bystanders in the Communities.

377.   Defendants knew or should have known that exposure to PFOA and PFOS was hazardous to the environment and to human health when it, or products containing it, were used in their foreseeable and intended manner.

378.   The chemical makeup of AFFF, PFOA, and PFOS underlying the product's hazardous characteristics involve the interpretation of technical, scientific information derived from research and testing.

379.    Knowing of the dangerous and hazardous properties of AFFF due to research and testing, Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF that did not contain PFOA or PFOS.

380.    These alternative designs and/or formulations were already available, practical, and technologically feasible.

381.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to persons and property resulting from Defendants' manufacture, marketing, and sale of AFFF containing PFOA or PFOS.

382.    As manufacturers of AFFF, Defendants not only had the ability to alter the product in such a way that maintained the fire-fighting abilities of the product while eliminating its inherently unsafe character, but also were in the best position to do so.

383.    AFFF's persistence, mobility, bioaccumulative potential, and PFOA and PFOS' links to numerous serious medical conditions, are not open and obvious conditions or part of general public knowledge of AFFF.

384.    Therefore, even though AFFF is useful for fighting hard to fight fires, the inherent risks associated with its use far outweigh any fire-fighting benefits, thereby rendering AFFF unreasonably dangerous.

385.    The manufacture, sale, and distribution of unreasonably dangerous AFFF renders the Defendants' product defective.

386.    Defendants' defective design and formulation of AFFF is the direct and proximate cause of the environmental and health impacts from PFOA and PFOS.

387.    As a result of Defendants' defective design and formulation of AFFF, the resulting contamination, the value and marketability of the Plaintiffs' property has been and will continue

to be diminished. Plaintiffs have suffered the need for and the cost of remediation of their properties and/or mitigation systems for those properties, and the cost of alterative water.

388.    As a direct result of the contamination, Plaintiffs have lost the use and enjoyment of their properties and have suffered annoyance, discomfort, and inconvenience as a consequence of the contamination of their properties by Defendants.

389.    As a direct result of Defendants' defective design and formulation of AFFF, the Plaintiffs have been injured in that their exposure to PFOA, PFOS, and potentially other toxic substances has caused them to develop numerous serious medical conditions associated with this exposure as more fully described herein and has significantly increased their risk of developing those conditions.

390.    As a direct result of Defendants' design and formulation of a defective product, Defendants are strictly liable in damages to the Plaintiffs.

391.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiffs.

## CLAIM FOR PUNITIVE DAMAGES

392.    Plaintiffs hereby repeat, reallege, and reiterate each and every allegation in the preceding paragraphs as if fully restated herein.

393.    Plaintiffs assert a claim for punitive damages under C.R.S. § 13-21-102.

394.    Upon information and belief, Defendants engaged in willful, wanton, malicious, and or/reckless conduct that was done without regard to the consequences or the safety of the Plaintiffs and caused the foregoing property damage, and injuries upon the persons and properties of Plaintiffs, disregarding their protected rights.

395.    Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure Plaintiffs in the Communities did not ingest PFOA and PFOS, which Defendants knew were linked to numerous serious medical conditions.

396.    Defendants have caused significant harm to Plaintiffs, including harm to the properties and water supplies of Plaintiffs and have demonstrated a conscious and outrageous disregard for their safety with implied malice, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

397.    WHEREFORE, the Plaintiffs demand judgment against Defendants, and each of them, jointly and severally, and request the following relief from the Court:

398.    a declaration that Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety, and property of Plaintiffs;

399.    an award to Plaintiffs of general, compensatory, exemplary, consequential, nominal, and punitive damages;

400.    an order for an award of attorneys' fees and costs, as provided by law;

401.    an award of pre-judgment and post-judgment interest as provided by law; and

402.    an order for all such other relief the Court deems just and proper.

## JURY DEMAND

403.    Plaintiffs demand a trial by jury of any and all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Dated: May 16, 2018

Respectfully Submitted,

**NAPOLI SHKOLNIK, PLLC**

*/s/ Tate J. Kunkle*
Tate J. Kunkle
Hunter Shkolnik
Paul J. Napoli
Louise Caro
Patrick J. Lanciotti
360 Lexington Avenue, Eleventh Floor
New York, NY 10017
Telephone: (212) 397-1000
E-mail: pnapoli@napolilaw.com
E-mail: hunter@napolilaw.com
E-mail: lcaro@napolilaw.com
E-mail: tkunkle@napolilaw.com
E-mail: planciotti@napolilaw.com

**MCDIVITT LAW FIRM**
Michael McDivitt
Kelly Hyman
19 East Cimarron Street
Colorado Springs, CO 80903
Telephone: (719) 471-3700
E-mail: mmcdivitt@mcdivittlaw.com
E-mail: kyman@mcdivittlaw.com